UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| RICHARD FEINER & CO., INC., : | Docket No. 07-cv-11218 (RMB)(RLE) |
| Plaintiff, : | |
| v. : | |
| THE NEW YORK TIMES COMPANY, : PHOTOFEST, INC. AND HOWARD : MANDELBAUM, : | |
| Defendants. | |

---

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

---

June 9, 2008

**COWAN, DEBAETS, ABRAHAMS,
& SHEPPARD, LLP**

Nancy E. Wolff
Toby M.J. Butterfield
Zehra Abdi
41 Madison Avenue, 34th Floor
New York, New York 10010
(212) 974-7474

*Attorneys for Defendants*

{A062164.DOC\5}

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

INTRODUCTION ............................................................................................................... 1

I.     PLAINTIFF'S COPYRIGHT CLAIM IS NOT PLAUSIBLE ....................................... 1

    1.     The Vaguely Worded Assignment Did Not Assign Plaintiff the Copyright to Either the Films or the Images ............................................... 3

    2.     The Book Registration Does Not Meet Jurisdictional Requirements for an Infringement Action Under Either the 1909 or 1976 Copyright Acts ....................... 5

    3.     Plaintiff's Book Registration Is Not Evidence of Copyright in the Images ............. 7

    4.     Plaintiff Lacks Standing for Lack of A Registration, Not for Lack of Individual Registrations ............................................................................ 8

    5.     Prior Rulings About Rights in the Images Have No Collateral Estoppel Effect ...... 9

II.     PLAINTIFF'S FALSE DESIGNATION OF ORIGIN CLAIM IS NOT PLAUSIBLE .. 10

{A062164.DOC\5}

## INTRODUCTION

Plaintiff has failed to plead or even identify anything suggesting it has standing to bring this copyright infringement case. While Plaintiff concedes it must have a valid copyright registration of the allegedly infringed photograph to proceed, Plaintiff confuses the issue of whether the image is one still frame taken from a motion picture, and cannot point to any registration of the motion pictures in question to establish that it can plead a claim. Instead, Plaintiff points to an assignment document, which is not a registration and does not convey any copyright to the images or the films that are basis of the suit, and cites a certificate of registration which covers several separate copyrightable constituent parts in a book, none of which is the image in question. Plaintiff attempts to distract the Court with red herrings about whether the 1909 version of the Copyright Act may be retroactively applied (although Defendants' motion does not seek that), whether the book is a collective work (although Plaintiff's own copyright registration indicates that) and whether this motion to dismiss should be converted into a summary judgment motion (although Defendants followed Second Circuit law concerning motions to dismiss by studiously avoiding relying on any evidence not referenced in plaintiff's Complaint). As Plaintiff does not plead or claim that it authored the pictures itself, Plaintiff's pleading is insufficient to confer the jurisdiction or the standing necessary to maintain this action. Plaintiff's claims must be dismissed.

**I.    PLAINTIFF'S COPYRIGHT CLAIM IS NOT PLAUSIBLE**

Defendants do not dispute that the standard with which a 12(b)(6) motion to dismiss must be reviewed is a "flexible 'plausibility standard'" See Caiafa v. Sea Containers Ltd., 525 F. Supp.2d 398 (S.D.N.Y 2007) (Berman, J.) citing Iqbal v Hasty, 490 F.3d 143 (2d Cir. 2007). However, the bald assertions, vague document references and unsupported claims of copyright ownership that abound in Plaintiff's complaint stretch this flexible standard beyond its break

point. See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 457 F. Supp. 2d 455, 459 (S.D.N.Y.2006) ("the claim may still fail as a matter of law ... if the claim is not legally feasible.") (citing Allaire Corp. v. Okumus, 433 F.3d 248, 250 (2d Cir. 2006)); Law Offices of Curtis V. Trinko, L.L.P. v. Bell Atlantic Corp., 309 F.3d 71, 74 (2d Cir. 2002).

Plaintiff claims that Defendants' motion "masquerades as a motion for summary judgment" because it annexed documents that "are outside the pleadings" and suggests that the Court should convert the motion into one for summary judgment. Memorandum of Law in Opposition to Defendants' Motion to Dimiss (the "Opp. Mem.") at 10. But both Plaintiff's complaint and the Opp. Mem. reference the documents in question: an assignment document (the "Assignment Document", referenced at Complaint, ¶ 3 and Opp. Mem. at pp. 11, 14, 20), a copyright registration in a book (the "Book Registration", referenced at Complaint, ¶ 3 and Opp. Mem. at 11, 13-17); the book itself (the "Book," referenced at Complaint, ¶ 3 and Opp. Mem. at 11, 13-16), the two images allegedly infringed (the "Images," referenced at Complaint, ¶ 9 and Opp. Mem. at 7, 8), the two films from which they were "derived" (the "Films," referenced at Complaint, ¶ 9 and Opp. Mem. at 7-8, 18).

Although Plaintiff failed to annex any of these items to its complaint, the Court is not required to passively accept Plaintiff's characterizations of them, but can review them on a motion to dismiss without converting it into a summary judgment motion. The Second Circuit has held that under Rule 12(b)(6), the court will deem the complaint to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir.2006). Moreover, even if a plaintiff does not attach to the complaint or incorporate by reference "a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document

into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." Holowecki v. Fed. Express Corp., 440 F.3d 558, 565-66 (2d Cir.2006). Even when a document is wholly outside the complaint, the necessity of transforming a Rule 12(b)(6) motion into a motion for summary judgment is "largely dissipated" when the plaintiff had actual notice of the document and relied upon it to frame the complaint. See Cortec Indus., Inc. v. Sum Holdings, L.P., 949 F.2d 42, 48 (2d Cir. 1991.)

The Assignment Document, the Book Registration and their related Copyright Office documents are integral to the Complaint, as the Complaint relies on them. See Mangiafico, 471 F.3d at 398 (When a "complaint relies heavily upon [the] terms and effect" of a document, it is considered "integral.") It would be preposterous to suggest that the "Assignment Document" and the other documents Plaintiff relies upon as its ticket into federal court are "extrinsic materials" beyond the scope of a 12(b)(6) motion to dismiss. There is no need to convert this motion to dismiss into a Rule 56 motion for summary judgment.[1]

### 1. The Vaguely Worded Assignment Did Not Assign Plaintiff the Copyright to Either the Films or the Images

Plaintiff's complaint is vague as to the origin of the Images. It alleges that the still Images are "derived from" the films "Hog Wild" and "Leave Em Laughing," thus blurring whether Plaintiff alleges the Images were screen grabs from the Films or were separately created still photographs taken by a photographer. Complaint ¶ 9. Either way, Plaintiff has no claim, as explained below.

---

[1] In accordance with the Court's directions at its pre-motion conference on April 16, 2008, Defendants omitted from this motion to dismiss the additional evidence described in their pre-motion letter to the Court.

Both Plaintiff's complaint and its Opp. Mem. imply that Hal Roach Studios became the valid copyright holder of either the Films or the Images via the Assignment. In fact, by its terms, the Assignment Document says nothing about the Films or the Images and is not an assignment of copyright at all. Rather, it is a vaguely worded grant of merchandising and novelty licensing rights to a number of undefined works. Unless Hal Roach Studios, as assignor, was the original copyright holder of every single motion picture featuring Laurel and Hardy and of every single still photograph of them, it is unclear whether Assignment Document conveyed any rights.[2]

First, we will assume that Plaintiff alleges that the Images were screen grabs from individual frames in the celluloid of the Films. For Plaintiff to be the valid assignee of the copyright to these two Films, the initial registration documents would have had to be in the name of Hal Roach Studios, or there would have to be an additional document evidencing a transfer from Arthur Weir and MGM to Hal Roach Studios. Notably, Plaintiff's opposition papers were silent on this point. Plaintiff offered no explanation for why there are no documents evidencing this supposed transfer, or how Hal Roach Studios could assign rights in the Films which it never owned. With no answers to these questions, it is entirely implausible that the broad language in the "Assignment" document encompasses rights to these Films or images that are "derived" therefrom.

---

[2] While Hal Roach Studios doubtless was the copyright owner in some Laurel and Hardy photoplays, Hal Roach Studios was never the copyright holder of the two Films at issue in Plaintiff's complaint, "Hog Wild" and "Leave Em Laughing." If Plaintiff had alleged that Hal Roach Studios had been the copyright holder of the Films, that Plaintiff had succeeded to that copyright, and that Plaintiff had obtained its own copyright registration thereof, then Plaintiff's claim for copyright infringement of individual screenshots from the Films would be plausible. In fact, Plaintiff makes no such claim. Those Films were registered in the name of Arthur Lewis Weir in 1928, and in the name of Metro Goldwyn Mayer in 1928, respectively, and there has been no subsequent assignment or transfer recorded with the Copyright Office. See Abdi Dec. Exs. E-F.

4

{A062164.DOC\5}

Second, assuming Plaintiff alleges that the Images were photographs taken separate and apart from the Films, Plaintiff still has no plausible copyright claim.[3] Plaintiff neither alleges it was the author of the Images, nor pleads or points to anything to suggest that it obtained the copyrights in the Images by assignment from the photographers, let alone that it registered that copyright.[4] Instead, Plaintiff's Complaint implies (without actually stating) that it has a copyright registration for the Images. A standard copyright search, obtained by Defendants but which Plaintiff must, as a Rule 11 matter, have reviewed in order to prepare and file its Complaint, reveals that there are no such copyright registrations.

## 2. The Book Registration Does Not Meet Jurisdictional Requirements for an Infringement Action Under Either the 1909 or 1976 Copyright Acts.

Having no other document to get into federal court, Plaintiff relies on the certificate of registration in the Book "Laurel and Hardy" as evidence of its copyright in the specific Images. To confuse the issue of its obvious jurisdictional problem that the registration does not cover the Images under, Plaintiff asserts that this case must be interpreted under the 1909 Act, and that Defendants are attempting to apply the 1976 act retroactively in violation of Roth v Pritikin, 710 F. 2d 934 (2d Cir. 1983) and the "takings" clause of the Constitution. Opp. Mem. at 11.

Pursuing this creative but faulty logic, Plaintiff argues that Morris v Business Concepts, 295 F. 3d 65 (2d Cir. 2001), is not dispositive, claiming that Morris did not address works created under the 1909 Act and that by relying on Morris, Defendants are violating Roth by

---

[3] In fact, Plaintiff's own Book, the copyright registration of which Plaintiff alleges gives this Court jurisdiction, Complaint ¶ 3, describes publicity stills including the Images as follows: "The photographs used are mostly studio publicity pictures, shot by a still photographer either just before or just after the actual shooting of the movie scene depicted." See John McCabe, Al Kilgore & Richard W. Bann, Laurel & Hardy (Bonanza Books 1983) p 17.

[4] Plaintiff's newly minted argument that the Images were works for hire is nowhere in the Complaint, nowhere reflected in the Book Registration, and appears for the first time in the Opp.

5

applying § 411(a) retrospectively. But Plaintiff never even tries to demonstrate that the law under the 1909 Act was any different. The 1909 Act had a similar requirement regarding compilations: "the publication of any such new works shall not affect the force or validity of any subsisting copyright upon the matter employed or any part thereof, or be construed to imply an exclusive right to such use of the original works" See 17 U.S.C. § 6. Morris firmly holds that unless the copyright owner of a collective work also owns all the rights in a constituent part, a collective work registration will not extend to a constituent part. Morris 283 F.3d 502 506. Morris could just as easily addressed works created under the 1909 Act. Applying Morris to the instant case does not constitute a retroactive application of the 1976 Act.

Plaintiff has not alleged (and nor can it prove) that it owns any of the rights in the constituent parts of the Book, other than those cited in its Book Registration. That Book Registration never mentions any photographs, let alone the Images. Under Morris, the Book Registration therefore cannot reflect ownership over any of the images that appear in the book, whether under the 1909 Act or the current Act. Whether referred to as § 411(a) of the current Act or § 12 of the 1909 Act, the prerequisite of registration before commencing a suit has always been the law under the either relevant Copyright Act. See Lumiere v. Pathe Exch, 275 F. 428, (2d Cir. 1921) (court refused to allow plaintiff to proceed with an infringement suit under Copyright Act, § 12, 17 U.S.C.A. § 12 because plaintiff had not obtained a certificate of registration); Vacheron & Constantin-Le Coultre Watches, Inc. v. Benrus Watch Co., 260 F.2d 637(2d Cir. 1958) (court refused plaintiff's infringement case because plaintiff did not succeed in 'registering' his wrist watch as a 'work of art' under § 5(g) of the Copyright Act). Indeed, the

---

Mem. at 13. Whether works for hire or not, the copyright in the Images had to be registered under both the 1909 Act and the 1976 Act alike to ground an action.

plain language of 17 U.S.C.A. § 12 (the 1909 Act) states "No action or proceeding shall be maintained for infringement of copyright in any work until the provisions of this Act with respect to the deposit of copies and registration of such work shall have been complied with." Plaintiff's argument that because §411(a) did not exist at the time, defendants' jurisdictional challenge constitutes a retroactive application of 1976 act is completely baseless.[5]

### 3. Plaintiff's Book Registration Is Not Evidence of Copyright in the Images

As explained above, the Book Registration is only evidence of ownership of the copyright in the parts of the Book listed in the Registration. Pursuing another red herring, Plaintiff's Opp. Mem. challenged Defendants to present facts to show that the Book is a collective work. Opp. Mem. p.13. Those facts appear in the Book Registration, which lists three authors, each credited with their respective contribution: Text by John McCabe, Compiled by Al Kilgore, Filmography by Richard W. Bann. The very definition of a collective work is a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole. 17 U.S.C.A. § 101. The contributions of each of the authors referenced in the Certificate render the book a collective work.

Plaintiff's reference to the case of Filmvideo Releasing v Hastings, 509 F.Supp. 60 (S.D.N.Y. 1981), *aff'd in part, rev'd in part*, 669 F.2d 91(2d Cir.1981) for the proposition that that book's registration protects the text and still images contained within it under the 1909 Act is a misreading of a case, the facts of which bear no resemblance to this one. Filmvideo dealt

---

[5] Plaintiff's citations to Roth and Martha Graham School and Dance Foundation, Inc. v Protas, 380 F. 3d 624 (2d Cir. 2004) are thus irrelevant. Both those cases dealt with whether works were created as works for hire, not in issue here.

with copyright ownership of fictional characters in a series of books. The court held that the author of the series had sufficiently delineated the characters he created in his book so as to afford copyright protection to the characters of Hopalong Cassidy and friends, and that when a movie was made incorporating those characters it constituted an unauthorized derivative work. In this case, the Book is not a work of fiction, the characters and stories behind Laurel and Hardy were not penned by Hal Roach or Richard Feiner, nor is this a case involving an unauthorized derivative work. The Book is thus a collective work comprised of different authors' constituent parts, and Plaintiff's reliance on Filmvideo is misleading at best.

### 4. **Plaintiff Lacks Standing for Lack of A Registration, Not for Lack of Individual Registrations**

Contrary to Plaintiff's assertion, Defendants by no means suggest that Plaintiff lacks standing to sue because it did not individually register the subject photographic Images. Nor do Defendants challenge the validity in general of the Book Registration, as Plaintiff suggests. Rather, Defendants challenge the validity of the Book Registration to give jurisdiction over the specific claims alleged in its Complaint. Because Plaintiff is not credited with any degree of authorship, the Book Registration merely gives Plaintiff the ability to bring copyright infringement claims based on the "selection and arrangement" of the Book's contents. See Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 357 (1991). Far from "ignoring their own Exhibit C", Defendants urge the Court to examine the Certificate in great detail as proof of "the facts stated herein". Notably absent as authors are Hal Roach Studios or Richard Feiner. Also notably absent is the mention of any photographs or images. It is simply

8

implausible for Plaintiff to rely on this Book Registration to allege that it is either the author of or the assignee of any rights in the Images.[6]

### 5. Prior Rulings About Rights in the Images Have No Collateral Estoppel Effect

Plaintiff accuses Defendants of attacking prior rulings of the Court in other cases concerning Laurel & Hardy materials, instead of presenting an analysis as to whether Plaintiff's rights are plausible. In actuality, it is Plaintiff who is attempting to prevent this Court from analyzing the claims presented in this suit, albeit by insisting that these issues have already been decided.

Plaintiff's laundry list of prior cases involving claims about Laurel & Hardy were all against other parties. Relying on them is an improper attempt to invoke the doctrine of collateral estoppel against Defendants. "[O]ne general limitation the court has repeatedly recognized is that the concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." Allen v McCurry, 449 U.S. 90, 95 (1980). By its very terms, this doctrine does not apply. Defendants were not parties to any of the cases Plaintiff cites in its opposition, nor do any of prior cases deal with the facts presented here. See Defendants' Motion to Dismiss at 6-9.[7]

---

[6] This case is entirely unlike the facts in Gross v NYP Holdings, Inc. and News America Incorporated, 2007 U.S. Dist. LEXIS 25871 (S.D.N.Y. 2007), in which the plaintiff photographer registered a group of his photographs with the Copyright Office and received a Registration Certificate. There was no question that Plaintiff was the author of photographs, and the Court was not asked to decide rights to constituent parts of a collective work. The only issue was whether that Court viewed the registration of multiple photographs as a single work or group registration.

[7] Plaintiff accuses defendants of "willfully" neglecting to cite to the unreported 1975 decision of Judge Motley which permanently enjoined the publication and distribution of a book containing still photographic images of Laurel and Hardy. First, it should be noted that unreported decisions are not precedent, and, as the decision is not even available through electronic legal research tools, Plaintiff certainly cannot accuse Defendants of willful neglect. In addition, the decision of Judge Motley fails to clarify chain of title issues. In deciding that

9

II. **PLAINTIFF'S FALSE DESIGNATION OF ORIGIN CLAIM IS NOT PLAUSIBLE**

Finally, Feiner has no response to the numerous cases in this court which have dismissed § 43(a) claims in copyright cases because of the Supreme Court's ruling in <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23 (2003). Instead, Plaintiff simply argues that the <u>Dastar</u> decision itself was based on "expired copyrights" and did not completely foreclose reverse passing off claims for communicative works. Courts in this district have repeatedly dismissed §43(a) claims in cases involving reverse palming off claims concerning works still protected by copyright.

Furthermore, Plaintiff overlooks the circumstances, not present here, with which the <u>Dastar</u> court ruled necessary for such a claim to exist. <u>Dastar</u> expressly held that only the producer of the tangible "goods" embodying the idea expressed in a communicative work may raise a claim of false designation of origin. <u>Id.</u> at 37. "[T]he gravamen of the harm in a reverse palming of case is that the originator of the misidentified product is involuntarily deprived of the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory product." <u>Rosenfeld v. W.B. Saunders, Division</u>

---

certain certificates of copyright renewals in Laurel & Hardy films filed by Hal Roach Studios were valid, Judge Motley based her decision on the fact that "No challenge to renewals were made during the 9-16 years since the certificates were issued." <u>See</u> Opp.Mem., Ex. H at 4 relying on the case of <u>Epoch Producing Corporation v Killiam Shows Inc.</u>, 424 U.S. 955 (1976) to create a presumption of validity in the certificates simply because they were not challenged. However, Motley's decision also quoted <u>Epoch</u> for holding that "such a presumption may be dissipated by proof that material statements in the certificate or renewal were false". As Plaintiff did not annex those certificates of renewal to its opposition and further, as the certificates of renewal were never a subject of this litigation, Defendants have never had any opportunity herein to challenge the validity of these certificates. Second, Motley's decision on the validity of Hal Roach's renewal certificates is limited to copyrights that were filed by MGM and Loews and fails to address that the original copyright registration for the film "Hog Wild" was registered in the name of Arthur Lewis Weir, (not MGM or Loews) and that there are no subsequent transfers

10

{A062164.DOC\5}

of Harcourt Brace Jovanovich, Inc., 728 F. Supp. 236, 241 (S.D.N.Y. 1990), aff'd, 923 F.2d 845 (2d Cir. 1990). Courts in this Circuit have routinely stated that "[a] successful reverse passing off claim requires that the plaintiff establish...that the work at issue originated with the plaintiff.[8] Carrell v. The Shubert Organization, Inc., 104 F.Supp.2d 236, 259 (S.D.N.Y. 2000). Feiner could not and does not claim that it was the origin of the images of Laurel and Hardy referenced in the Complaint, and thus cannot claim that the goodwill purportedly afforded to defendants Howard Mandelbaum and Photofest based on the Images has been misappropriated.[9] As Feiner is merely the purported rightsholder of the intellectual property rights in certain Laurel and Hardy films, it thus lacks standing to bring a claim of false designation of origin.

## CONCLUSION

Plaintiff's motion to dismiss for copyright infringement should be granted.

Dated:   New York, New York
         June 9, 2008

                                                    COWAN DEBAETS ABRAHAMS
                                                        & SHEPPARD LLP

                                                    By: _____
                                                        Toby Butterfield
                                                    41 Madison Avenue - 34th Floor
                                                    New York, New York 10010
                                                    Tel. (212) 974-7474
                                                    Fax (212) 974-8474
                                                    *Attorneys for Defendants*

---

or assignments on record for that title. This unreported 1975 decision thus carries no weight in this action.

[8] Even cases cited by Feiner point to this requirement. See Waldman Publ'g Corp. v. Lanoll, Inc., 43 F.3d 775, 781-82 (2d cir. 1994), Parks v. ABC, Inc., 2008 U.S. Dist. LEXIS 5085 at *10-11 (S.D.N.Y. January 24, 2008).

[9] Plaintiff unpersuasively cites to Feiner v. Larry Harmon Pictures Corp., 38 F. Supp. 2d 276 (S.D.N.Y. 1999), although it was decided five years before Dastar.