UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RICHARD FEINER AND COMPANY, INC.,

                    Plaintiff,

   - against -

THE NEW YORK TIMES COMPANY,
PHOTOFEST, INC., and HOWARD
MANDELBAUM,

                    Defendants.
------------------------------------------------------------X



07 Civ. 11218 (RMB) (RLE)

**ORDER**

## I. Background

Richard Feiner and Company, Inc. ("Plaintiff" or "Feiner") brings this action against the New York Times Company ("New York Times" or "Times"), Photofest, Inc. ("Photofest"), and Photofest's President, Howard Mandelbaum ("Mandelbaum") (collectively, "Defendants") alleging that Defendants willfully infringed Plaintiff's copyrights in two still photographic images ("Images") of the comedians Stan Laurel and Oliver Hardy ("Laurel and Hardy"), in violation of 17 U.S.C. § 101 et seq. (See Complaint, dated Dec. 12, 2007 ("Compl."), ¶¶ 1, 7–13, 15.)[1] One image is from the 1928 film "Leave 'Em Laughing" ( "Leave 'Em Laughing Image") and the other image is from the 1930 film "Hog Wild" ( "Hog Wild Image").

The New York Times published the Hog Wild Image on the first page of its "House & Home" section on May 3, 2007. (Pl.'s Local Rule 56.1 Statement, dated Mar. 16, 2009 ("Pl. 56.1"), ¶ 1; Defs.' Local Rule 56.1 Counter-Statement of Undisputed

---

[1] The Court previously dismissed Plaintiff's claims of false designation of origin under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), and unfair competition under New York state common law. (See Decision and Order, dated Aug. 1, 2008.)

Material Facts, dated Apr. 13, 2009 ("Defs. 56.1"), ¶ 1; see also Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. & to Disqualify Defs.' Expert Witness, dated Mar. 16, 2009 ("Pl. Mem."), Ex. E.) The Times also featured the Hog Wild Image on its website, www.nytimes.com, where it still can be viewed today. (Pl. 56.1 ¶ 3, Defs. 56.1 ¶ 3; see also Joyce Wadler, Easy, Mr. Fix-It, N.Y. Times, May 3, 2007, available at http://www.nytimes.com/2007/05/03/garden/03disasters.html (last visited Dec. 9, 2009); Pl. Mem. Ex. E.) Sometime in 2006 or 2007, Photofest placed the Leave 'Em Laughing Image on its website, www.photofestnyc.com, "in order to solicit business" and maintained it there "for almost one year." (Pl. 56.1 ¶ 4; Defs. 56.1 ¶ 4; see also Pl. Mem. Exs. G (Photofest, http://www.photofestnyc.com/services.html, printed Aug. 6, 2007), K (Dep. of Howard Mandelbaum, dated Oct. 30, 2008 ("Mandelbaum Dep.")), at 53.)

On March 16, 2009, Plaintiff moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and also moved to strike a report, dated December 2, 2008, and related deposition testimony of Defendants' proposed expert witness, Mary Corliss ("Corliss"). (See Decl. of Zehra Abdi, dated Apr. 13, 2009 ("Abdi Decl."), Ex. 7 (Expert Decl. of Mary Corliss Concerning the Role and Function of Publicity Stills ("Corliss Report")); Ex. 9 (Defs.' Excerpts from Dep. of Mary Corliss, dated Jan. 28, 2009 ("Corliss Dep.")).) Plaintiff argues, among other things, that: (1) ever since receiving a broad assignment of rights in 1972 ("1972 Assignment") from Hal Roach Studios ("Roach"), Plaintiff has held the copyright in, inter alia, "all of the still photographic images" featuring Laurel and Hardy from motion pictures produced by Roach; and (2) in 1975, Plaintiff published the Images in a book titled "Laurel & Hardy" ("1975 Book") and, thereafter, registered the 1975 Book for

2

copyright protection. Plaintiff contends that "[t]he book's copyright registration protects the still photographic images contained within it[.]" (Decl. of Richard Feiner, dated Mar. 16, 2009 ("Feiner Decl."), ¶ 3; Pl. Mem. at 3).) Plaintiff also contends that Corliss "is not an expert regarding the practices of the motion picture industry in the 1920's and 30's[.]" (Pl. Mem. at 23.)

On April 13, 2009, Defendants opposed Plaintiff's motion and cross-moved for summary judgment, arguing that "Plaintiff cannot prove copyright ownership in the Images at issue" because, among other reasons: (1) "the Images fell into the public domain" in 1928 and 1930, when the Images were "distributed in publicity materials" by Roach without proper copyright notice, or alternatively, when the Images were published with Roach's consent "in a 1967 book without the required copyright notice," and (2) "Plaintiff's copyright registration in [the] 1975 Book only protects the text in its book, as the publisher, who drafted the copyright registration, did not claim copyright in the preexisting Images." (Defs.' Mem. of Law in Supp. of Summ. J. Dismissing All Claims, dated Apr. 13, 2009 ("Defs. Mem."), at 1–2, 8–11.) And, Defendants argue that Corliss, who was head of the film stills archive at the Museum of Modern Art ("MoMA") in New York from 1968 until 2002, is "well qualified to testify about motion picture industry practice relating to still images." (Defs. Mem. at 20.)

On May 20, 2009, Plaintiff opposed Defendants' cross-motion and replied in support of its own motion. (See Pl.'s Reply Mem. of Law in Supp. of Its Mot. for Summ. J. & to Disqualify Defs.' Purported Expert Witness & Answer in Opp'n to Defs.' Cross-Mot. for Summ. J., dated May 20, 2009 ("Pl. Reply").) And, on June 3, 2009,

Defendants filed a reply in support of their cross-motion. (See Defs.' Reply Mem. of Law in Supp. of Mot. for Summ. J., dated June 3, 2009 ("Defs. Reply").)

On November 25, 2009, the Court held oral argument. (See Tr. of Proceedings, dated Nov. 25, 2009 ("Hr'g Tr.").)

**For the reasons stated below, Plaintiff's motion for summary judgment and to disqualify Defendants' expert is denied, and Defendants' motion for summary judgment is denied.**

## II.     Legal Standard

Summary judgment may not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285–86 (2d Cir. 2002). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs., Ltd. P'ship, 33 F.3d 1219, 1224 (2d Cir. 1994). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Where, as here, cross-motions for summary judgment are made, the standard is the same as that for individual motions for summary judgment. See Morales v. Quintel Entm't, 249 F.3d 115, 121 (2d Cir. 2001).

4

**III.   Analysis**

**(1)   Expert Testimony**

Plaintiff argues, among other things, that Corliss: (1) lacks facts "to support the allegation that divestive publication occurred, [so] her beliefs amount to mere speculation and carry no weight"; (2) "does not claim in her writing to be an expert on the business practices of Hal Roach Studios or of its Laurel & Hardy works in order to have factual references upon which she can rely"; (3) "lacks connections to academia or to the motion picture industry, which industry she admits to never having worked in"; (4) "admits to having never published any books regarding motion picture industry practices"; (5) lacks "an understanding of [copyright] concepts," yet makes statements that "amount to legal conclusions regarding the status of [P]laintiff's rights under copyright"; and (6) admits, "most egregious[ly], and entirely undermining her claims as being an expert . . . to never reading any of the opinions of this District [allegedly] upholding the validity of the Feiner [C]ompany's rights under copyright to these and the other Laurel & Hardy still photographic images[.]" (Pl. Mem. at 23–29.)

Defendants counter that Corliss, who received a bachelor of arts degree in 1966 from Russell Sage College and subsequently became the head of MoMA's Film Stills Archive, qualifies as an expert in the practices of motion picture studios in the 1920s and 1930s. (See Defs. Mem. at 20–25.) During her tenure at MoMA, Corliss was, among other things, "required . . . to study, document, and comment on the industry practices of the motion picture industry, and in particular the practices of publicity and archival departments of major and minor motion picture studios." (Corliss Report ¶¶ 3, 6; Corliss Dep. at 7.) Corliss has "curated more than 40 film exhibitions" and published articles,

5

reviews, and sections of books on film stills, focusing on the "historical significance" and "use of stills in the motion picture industry." (See Abdi Decl. ¶ 13 & Ex. 9 at 25; Abdi Decl. Ex. 10 (Mary Corliss, "Still and Moving," in Roger Ebert, The Great Movies (2003); Mary Corliss, "The Fight for Preservation," in Roger Ebert, The Great Movies II (2005)); Corliss Report ¶¶ 4–6). In addition, Defendants argue that Corliss: (1) bases her conclusions on "first-hand knowledge of [the] relevant industry and the practice of motion picture studios['] publicity departments"; (2) need not "claim to be an expert on the business practices of Hal Roach Studios specifically"; (3) "did not have to be an employee of the [studios'] publicity departments [or] hold a particular degree or license to be an expert"; (4) has written "essays on the practice of film stills [and] list[ed] the names of those essays and the books in which they are included"; (5) "has not claimed to be an expert on copyright law"; and (6) is not a lawyer and does not purport to offer testimony about Feiner's previous litigation history. (Defs. Mem. at 20–25; Defs. Reply at 5.)

Rule 702 of the Federal Rules of Evidence ("Fed. R. Evid.") allows a witness qualified "by knowledge, skill, experience, training or education" to offer expert testimony if her "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. By virtue of her background, Corliss can be of great assistance to the Court and the jury on the practices of motion picture studios in the 1920s and 1930s, including the use by studios of still photographs to promote their films. See Motorola, Inc. v. Abeckaser, No. 07 Civ. 3963, 2009 WL 962809, at *6 (E.D.N.Y. Apr. 8, 2009); see also Daubert v. Merrill Dow Pharm., Inc., 509 U.S. 579, 597 (1993); Lee v. Marvel Enters., Inc., 386 F. Supp. 2d 235,

246 (S.D.N.Y. 2005); Cary Oil Co. v. MG Ref. & Mktg., No. 99 Civ. 1725, 2003 WL 1878246, at *2 (S.D.N.Y. Apr. 11, 2003). Corliss has extensive professional experience in dealing with and writing about the subject matter at the heart of this litigation. See McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1043 (2d Cir. 1995); Sullivan v. Ford Motor Co., No. 97 Civ. 0593, 2000 WL 343777, at *4 (S.D.N.Y. Mar. 31, 2000) ("One knowledgeable about a particular subject need not be precisely informed about all details of the issues raised in order to offer an opinion."). And, the Court is satisfied that Corliss's conclusions rest on a sufficient factual foundation. (See Corliss Report ¶¶ 19 ("I have had an opportunity to review the photographs at issue in this case."), 22 ("I have reviewed a document that has been provided to me [that] appears to be a copy of the press book for the film 'Hog Wild.'"), 25 ("I have reviewed the [1967] book titled The Films of Laurel and Hardy by William K. Everson. ['1967 Book'] . . . Page 103 of the book displays the [Hog Wild Image.]"), 28 ("I have also reviewed the [1975] book titled Laurel & Hardy by John McCabe, Al Kilgore and Richard W. Bann. . . . Both images that are subjects of this suit appear in the book."); see also Abdi Decl. Ex. 9; Pl. Mem. Ex. S (Pl.'s Excerpts from Corliss Dep.).)

    **(2)    Copyright in the Images**

"To establish [copyright] infringement, two elements must be proven: [i] ownership of a valid copyright, and [ii] copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); see also Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 131 (2d Cir. 2003).

Under the Copyright Act of 1909 ("1909 Act"), the author or creator of a work owned a common law copyright in the work unless and until the work was published.[2] See Shoptalk Ltd., 168 F.3d at 590 ("So long as the original work remained unregistered and unpublished . . . the common law protected the author's rights in the work in perpetuity."). A work is published when "by the consent of the copyright owner, the original or tangible copies of a work are sold, leased, loaned, given away, or otherwise made available to the general public, or when an authorized offer is made to dispose of the work in any such manner even if a sale or other such disposition does not in fact occur." Kramer v. Newman, 749 F. Supp. 2d 542, 549 (S.D.N.Y. 1990) (quoting Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 4.04 ("Nimmer on Copyright")); see also Hirshon v. United Artists Corp., 243 F.2d 640, 644 (D.C. Cir. 1957).

If the work were published (i) with the author's consent (ii) to a general audience and (iii) with appropriate copyright notice attached, the author became the statutory owner of copyright ("investive publication"). If the work were published (i) with the author's consent (ii) to a general audience (iii) but without proper copyright notice attached, the work fell into the public domain ("divestive publication"). Shoptalk Ltd., 168 F.3d at 591 ("[O]nce a work is published with the author's consent in any medium, it loses its common-law protection."); Am. Visuals Corp. v. Holland, 239 F. 2d 740, 742

---

[2] The 1909 Act, 17 U.S.C. § 1 et seq., repealed effective 1978 by Copyright Act of 1976, 17 U.S.C. § 101 et seq. ("1976 Act"), "governs works published before 1978." Shoptalk, Ltd. v. Concorde-New Horizons Corp., 168 F.3d 586, 590 (2d Cir. 1999); Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc., 380 F.3d 624, 629 (2d Cir. 2004).

(2d Cir. 1956); Procter & Gamble Co. v. Colgate-Palmolive Co., No. 96 Civ. 9123, 1998 WL 788802, at *38 (S.D.N.Y. Nov. 9, 1998).

Defendants argue that the Images were divestively published by Roach in or about 1928 and 1930 (i.e., well before any 1972 Assignment to Plaintiff was made). (Defs. Mem. at 8–11; Decl. of Howard Mandelbaum, dated Apr. 1, 2009 ("Mandelbaum Decl."), Exs. C (Press Book for "Hog Wild" ("Hog Wild Press Book")), D (1967 Book) at 103, E (1967 Book) at 57.) Defendants also argue that Plaintiff's registration of the 1975 Book for copyright protection ("1975 Registration"), even if valid, protects the book itself but "does not cover the Images at issue." (Defs. Mem. at 17; see Defs. Mem. at 15–17.)

Plaintiff argues, among other things, that Defendants have not met the "higher standard of factual proof" that a divestive publication has occurred because: (1) Defendants have not adduced detailed evidence of a "public dedication"; and (2) "there are numerous questions affecting" the authenticity of Defendants' evidence, including whether the Hog Wild Press Book "is a true and complete copy[.]" (Pl. Mem. at 21–23 (citing Roy Export Co. Estabm't of Vaduz, Liech. v. CBS, 672 F.2d 1095, 1101–02 (2d Cir. 1982)); Pl. Reply at 11.) Plaintiff also argues that Roach retained common law copyright in the Images until the 1972 Assignment and that Plaintiff obtained statutory copyright in the Images via the 1975 Registration. (Pl. Mem. at 13, 15; see also Pl. Mem. Ex. C (Copyright Registration for 1975 Book, No. A 680131, dated Oct. 14, 1975).)

Plaintiff also contends that Plaintiff's rights in Laurel & Hardy still images, including those at issue here, have "passed judicial muster on several occasions before

9

this Court," a proposition that is discussed preliminarily below. (Pl. Mem. at 15; see Pl. Mem. at 15–18.)

**Prior S.D.N.Y. Cases**

Plaintiff has cited five copyright cases litigated in this District which Plaintiff claims "uphold[] its still images rights in Laurel & Hardy" and refute Defendants' contention that the Hog Wild and Leave 'Em Laughing Images fell into the public domain prior to the 1972 Assignment. (Pl. Reply at 27; see Pl. Mem. at 15–18.) Defendants argue that the cases all "are against non-parties concerning other motion pictures or completely different subject matters," and are, consequently, "irrelevant to this case[.]" (Defs. Mem. at 17.)[3]

The Court concludes that, while they are useful to review, these five cases are not dispositive of the issues presented here. In Price v. Hal Roach Studios, Inc., 400 F. Supp. 836 (S.D.N.Y. 1975) (Stewart, J.), the Court concluded, among other things, "that the issue here is not one of copyright law" and that "[n]either the movies nor the stills . . . are at issue[.]" Id. at 842. In Richard Feiner & Co. v. Crown Publishers, Inc., No. 75 Civ. 3484 (S.D.N.Y. Aug. 29, 1975) (Motley, J.), the Court entered judgment pursuant to a settlement agreement between the parties regarding certain photographs that were not the Images at question in this litigation. (See Pl. Mem. Ex. Q (Unpublished Order, dated Aug. 29, 1975).) In Richard Feiner & Co. v. Turner Entertainment Co., 926 F. Supp. 40 (S.D.N.Y. 1997) (Owen, J.), Plaintiff's rights in photoplays were at issue. See id. at 41. And, while Judge Owen noted in Richard Feiner & Co. v. Larry Harmon Pictures Corp.,

---

[3]   See Pl. Reply. at 28 ("Although [D]efendants are not collaterally estopped by these rulings, nor has [P]laintiff claimed they are, there is no question that the [P]laintiff's rights have passed muster in this District.").

10

38 F. Supp. 2d 276 (S.D.N.Y. 1999), that "Feiner holds the copyrights to several motion pictures of the late comedy team of Stan Laurel and Oliver Hardy, as well as the still photographic images derived from those movies," that case did not concern the Images at question here. Id. at 277.[4] And, in Richard Feiner & Co. v. HR Industries, Inc., 10 F. Supp. 2d 310 (S.D.N.Y. 1998) (Owen, J.), vacated by No. 98-9390, 1999 WL 385783 (2d Cir. June 4, 1999), Feiner's copyright in a still photograph, "as well as [defendant's] copying, [was] conceded" for the (limited) purpose of defendant's motion and did not involve either of the Images at issue here. 10 F. Supp. 2d at 313; see 1999 WL 385783 at *3.

**Leave 'Em Laughing Image**

There are genuine issues of material fact surrounding ownership of the copyright in the Leave 'Em Laughing Image. See Flaherty v. Filardi, No. 03 Civ. 2167, 2007 WL 163112, at *7 (S.D.N.Y. Jan. 24, 2007) ("[A]s it cannot be said that there is no genuine issue as to any material fact . . . [the] motion for summary judgment is denied as to [plaintiff's] valid ownership of a copyright."); Harrison-Hoge Indus., Inc. v. Panther Martin S.R.L., No. 05 Civ. 2851, 2008 WL 905892, at *34 & n.6 (E.D.N.Y. Mar. 31, 2008).

Defendants' theory that divestive publication of the Leave 'Em Laughing Image occurred in or about 1928 when, to help promote the film "Leave 'Em Laughing," press books for the film and press kits containing still photographs were widely distributed to motion picture theatres around the country and to members of the press "without complying with the strict notice requirements under the 1909 Copyright Act," is not

---

[4] Also, the quoted passage was not part of the holding, which concerned venue and the consolidation of related actions.

11

proven as a matter of law. (See Defs. Mem. at 1, 8–10.) Defendants offer the testimony of Corliss and Mandelbaum about industry custom with respect to the use of still photographs for publicity purposes but provide no dispositive documentary evidence that publication occurred. (See Corliss Report ¶¶ 18, 23; Corliss Dep. at 73:5-8; Mandelbaum Decl. ¶ 6.) At the summary judgment stage, testimony regarding industry practice of a particular era "will be probative[,] but not determinative." Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 219 (3d Cir. 2006). The Court cannot draw even "legitimate inferences from the facts"; rather, that is the role of the jury. Anderson, 477 U.S. at 255; see Topps Co., Inc. v. Cadbury Stani S.A.I.C., 526 F.3d 63 (2d Cir. 2008); R.F.M.A.S., Inc. v. Mimi So, 619 F. Supp. 2d 39, 60 (S.D.N.Y. 2009) (citing Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996)).

Factual questions for a jury to decide center upon the circumstances of the distribution of the Leave 'Em Laughing Image in or about 1928, i.e., whether the Leave 'Em Laughing Image was distributed as part of publicity materials; whether a press book or press kit was created for the film "Leave 'Em Laughing"; whether such a press book or press kit, if created, included the Leave 'Em Laughing Image; the extent of distribution (i.e., to theatre owners, media outlets, and/or the general public); whether Roach consented to distribution; and whether distribution was made with a copyright notice. See Shoptalk Ltd., 168 F.3d at 590–91; see also Dolman v. Agee, 157 F.3d 708, 714 (9th Cir. 1998); Arnold v. Treadwell, 642 F. Supp. 2d 723, 735 (E.D. Mich. 2009) ("a dispute as to the scope of the plaintiff's consent . . . may only be resolved by the fact finder"); Monogram Models, Inc. v. Industro Motive Corp., 448 F.2d 284, 286 (6th Cir. 1971)

12

("Was there sufficient and adequate legal notice of copyright on all the subject matter . . . for which plaintiff seeks copyright protection?").

Defendants' theory that the Leave 'Em Laughing Image was published in the 1967 Book is also not proven as a matter of law. Questions of fact for the jury include, among other things, whether the image in the 1967 Book is different than the image that Photofest used on its website or whether the images are, as Defendant argues, "nearly identical." (See Defs. Mem. at 10; see Mandelbaum Decl. Ex. E (1967 Book), at 57); Langman Fabrics v. Graff Californiawear, Inc., 160 F.3d 106, 116 (2d Cir. 1998).[5]

At the same time, the Court cannot grant summary judgment in favor of Plaintiff, see Baker v. Urban Outfitters, Inc., 254 F. Supp. 346, 351 (S.D.N.Y. 2003); Repp v. Webber, 132 F.3d 882, 889 (2d Cir. 1997), who contends that its copyright registration of the 1975 Book "protects the still photographic images contained within it under the statutory protections," including the Leave 'Em Laughing Image. (Pl. Mem. at 13); see 17 U.S.C. § 410(c); Pl. Mem. Ex. F (1975 Book), at 149).[6] Plaintiff's 1975 Registration may be found to have registered statutory copyright in the Leave 'Em Laughing Image, but only if Plaintiff, at the time, held the common law copyright in the Image. See

---

[5] The 1967 Book's image appears to feature Laurel and Hardy in a bed, with Laurel sporting a bandage around his head (in the shape of rabbit ears) and in obvious pain from a toothache, while the image used on the website (and in the 1975 Book) depicts a scene in which Laurel and Hardy are standing and Hardy is about to slam closed a door that is attached by a string to Laurel's aching tooth, presumably in order to extract it. (See Pl. Mem. Ex. G.); see also Nimmer on Copyright § 4.04; Arica Inst., Inc. v. Palmer, 970 F. 2d 1067, 1072 (2d Cir. 1992).

[6] Section 410(c) provides: "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court." 17 U.S.C. § 410(c).

13

Morris v. Bus. Concepts, Inc., 259 F.3d 65, 71 (2d Cir. 2001) ("Unless the copyright owner of a collective work . . . owns all the rights in a constituent part, a collective work registration will not extend to the constituent part."); see also Kaplan v. Fox Film Corp., 19 F. Supp. 780, 781 (S.D.N.Y. 1937) (citing Mail & Express Co. v. Life Publ'g Co., 192 F. 899 (2d Cir. 1912)). And, whether Plaintiff held the copyright in the Image in 1975 hinges upon the resolution of the factual issues described above. (See supra at 11–12); see also Sutton Imp.-Exp. Corp. v. Starcrest of Cal., 762 F. Supp. 68, 70 (S.D.N.Y. 1991).

**Hog Wild Image**

There are also issues of fact (albeit fewer) regarding whether there was a divestive publication of the Hog Wild Image. See Flaherty, 2007 WL 163112, at *7. As with the Leave 'Em Laughing Image, Defendants contend that the Hog Wild Image was published in or around 1930 when Roach distributed it, without proper notice, to theatres and other media outlets through "press books" that offered the Image for sale. (Defs. Mem. at 1, 8–10.) In support of their position, Defendants present a photocopy of the Hog Wild Press Book that (clearly) appears to include the Hog Wild Image; the Press Book relied upon by Defendants also offers the Hog Wild Image for sale, and does not seem to contain the copyright notice required by the 1909 Act. (See Hog Wild Press Book at 3; see also Corliss Report ¶ 22.)[7]

---

[7] Corliss testified that she reviewed the Hog Wild Press Book and that, among other things, "[o]ne of the lobby cards that is advertised for display on the press book is the same image from 'Hog Wild' that is the subject of this lawsuit." (Corliss Report ¶ 22; see also Corliss Report ¶ 10 (defining "press books")); Transamerica Corp. v. United States, 15 Cl. Ct. 420, 447 (Aug. 31, 1988) (same).

14

Though Defendants present seemingly persuasive and largely unrebutted evidence of divestive publication – i.e., that Roach may well have consented to the inclusion of the Hog Wild Image in the Hog Wild Press Book, (see Feiner Dep. at 166:2-19), that Roach may not have reserved copyright either in the Hog Wild Press Book or the Hog Wild Image, (see Hog Wild Press Book; see also Corliss Report ¶¶ 14, 23; Mandelbaum Decl. ¶ 9), that the Hog Wild Image was found in at least one archive of movie memorabilia, (see Feiner Decl. ¶ 16), and that some time in the last two years Mandelbaum obtained a copy of the Hog Wild Press Book from the Margaret Herrick Library at the Academy of Motion Picture Arts and Sciences, (see Mandelbaum Decl. ¶ 16), Defendants' evidence comes in substantial part in the form of testimony from Corliss and Mandelbaum about the customary business practices of movie studios. (See Corliss Report ¶¶ 10, 14, 15; Corliss Dep. at 69:21–70:8, 73:5-8; Mandelbaum Decl. ¶ 9.) Such testimony, however compelling a jury may find it to be, is not sufficient for the Court to find – at the summary judgment stage – that a divestive publication of the Hog Wild Image was made. See Anderson, 477 U.S. at 255; Berckeley Inv. Group, 455 F.3d at 219; Gallo, 33 F.3d at 1224; Burnett v. Lambino, 204 F. Supp. 327, 329 (S.D.N.Y. 1962) (citing Hirshon, 243 F.2d at 644–45)); Roy Export Co., 672 F.2d at 1102; Nimmer on Copyright § 4.13[A][1]; (supra at 11–13.)

Similarly, though Defendants present persuasive evidence that the Hog Wild Image was included in the 1967 Book without copyright notice and that the publication of the Book was not limited, it is for a jury to conclude (even if by inference) that the Image

15

was used with Roach's consent. See Gallo, 33 F.3d at 1224; see also Buckley v. Esquire, Inc., 344 F. Supp. 1133, 1135 (S.D.N.Y. 1972).[8]

Plaintiff's motion for summary judgment as to the Hog Wild Image is also denied. See Baker, 254 F. Supp. at 351; (supra at 12–13.) As with the Leave 'Em Laughing Image, Plaintiff's argument that the 1975 Registration covered not only the 1975 Book itself but also the constituent images requires a determination, among other things, that Plaintiff held the copyright in the Hog Wild Image at the time of the 1975 Registration – which the Court is unable to make. See Morris, 259 F.3d at 71; R.F.M.A.S., 619 F. Supp. 2d at 60; Anderson, 477 U.S. at 255; Glover v. Austin, 289 F. App'x 430, 430 (2d Cir. 2008) (citing Repp, 132 F.3d at 889).

## IV.   Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment and to strike the testimony of Defendants' expert [#54] is denied, and Defendants' cross-motion for summary judgment [#66] is also denied.

The parties and counsel are directed to appear before the Court for a trial scheduling/settlement conference on Wednesday, December 23, 2009, at 9:30 a.m., in Courtroom 21B of the Daniel Patrick Moynihan Federal Courthouse, 500 Pearl Street, New York, New York.

---

[8] The 1967 Book "includes an acknowledgment of [Roach's] 'senior executive,' Herbert Gelbspan, the very executive of [Roach] with whom Feiner himself dealt, for assistance in providing images from [Roach's] collection" and "there is no evidence that the 1967 Book was published without the consent of Herbert Gelbspan or Hal Roach Studios, Inc." (Defs. Mem. at 10 & n.4; see Mandelbaum Decl. Ex. D); ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C., 314 F.3d 62, 68–69 (2d Cir. 2002); Simpler Consulting, Inc. v. Wall, No. 05-452, 2008 WL 1710101, at *5–*6 (W.D.Pa. Apr. 7, 2008).

**The parties are directed to engage in good-faith settlement negotiations prior to the conference.**

Dated: New York, New York
December 15, 2009

_____
RICHARD M. BERMAN, U.S.D.J.

17